IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | EP-12-CR-217-KC |
| | § | |
| GUSTAVO CERTANTES-PEREZ, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered the government's Motion to Exclude the Expert Testimony of Tami Loehrs, ECF No. 54. After conducting a *Daubert* hearing on October 22, 2012, *see* Tr., ECF No. 77, and duly considering both the parties' arguments, the Court concludes that Rule 702 of the Federal Rules of Evidence will only permit Defendant's expert witness, Ms. Tami Loehrs, to testify according to the limitations set forth below. The government's Motion is therefore **GRANTED** in part and **DENIED** in part.

The Court has also considered Defendant's Motion to Exclude Expert Testimony and for a *Daubert* Hearing, ECF No. 79. Because the Defendant has not yet identified any expert opinion evidence that the government is likely to proffer, Defendant's motion is **DENIED**. Defendant may later request a *Daubert* hearing outside the presence of the jury, if Defendant specifically identifies the expert opinion testimony proffered by the government and grounds to challenge the expert opinion testimony as unreliable.

## I. BACKGROUND

The government alleges that on January 6, 2012, Defendant was arrested on charges of receipt and possession of materials depicting the sexual exploitation of children. Gov't Mot. 1; Crim. Compl. 3, ECF No. 1. Defendant is now charged under a four-count indictment with the

1

receipt, possession, and distribution of child pornography. Indictment 1-3, ECF No. 13. The government alleges that prohibited images of the sexual abuse of children were found on an external hard drive ("EXT1") in Defendant's home after his arrest. Gov't Mot. 1-3. Defendant's laptop computer ("L1H1") was also found in Defendant's home. Tr. 32. The Court is not aware of any allegation that prohibited images were found on L1H1 itself at the time of Defendant's arrest. *See, e.g.*, Crim. Compl. 3. Defendant and the government appear to agree, however, that L1H1 and a number of other laptop computers found in Defendant's home were connected through a computer network to EXT1, which permitted those laptops access to images located on EXT1. *See* Tr. 36, 58.

On April 24, 2012, Defendant's expert on computer forensics, Ms. Tami Loehrs, sent her assistant, Ms. Marlene Pulido, to conduct an examination of L1H1 and EXT1 at a government facility under the supervision of Homeland Security Investigations. Gov't Mot. 3; Tr. 11, 13. This examination, however, yielded only "preliminary" conclusions regarding the alleged viewing of prohibited images involving L1H1 and EXT1. Tr. 53. Due to logistical difficulties and time constraints, Ms. Pulido was apparently unable to perform a "complete examination" of the data stored on these two devices. *Id.* at 52-53.

According to the preliminary conclusions in Ms. Loehrs's report, the "files . . . identified by the Government as child pornography" were "opened and viewed" by a person using L1H1 on January 4, 2012, between six o'clock and seven o'clock in the evening. *See* Loehrs Report 23-27, 29-34, 37-38. Three different independent techniques confirmed this fact. That is, the examination by Ms. Loehrs's assistant demonstrated that the images had been viewed from L1H1: (1) by reviewing the "Recent" folder maintained by the laptop's operating system, *id.* at 23-27, (2) by reviewing the "Files Opened" on the laptop's internet browser, *id.* at 29-34, and (3)

by reviewing the "Recent Docs" listed in the "registry" of the laptop's operating system, *id.* at 37-38. Each one of these techniques demonstrated, in Ms. Loehrs's expert opinion, that the prohibited images had been viewed from Defendant's laptop computer, L1H1. *See id.* at 24, 30, 37. Many times, however, Ms. Loehrs has repeated a specific caveat. That is, Ms. Loehrs strongly emphasizes that she "did not find evidence indicating [Defendant] was at the keyboard during the viewing of these files" on Defendant's laptop computer, L1H1. *See id.* at 24, 30, 37; *see also* Tr. 25, 51, 53, 58.

On September 26, 2012, the government filed a motion challenging the admissibility of Ms. Loehrs's expert testimony based on her forensic examination of EXT1 and L1H1. Gov't Mot. 1-2. The government did "not contest the credentials of Ms. Loehrs or that her opinion may be based, in part, on specialized knowledge." *Id.* at 8. The government argued, rather, that Ms. Loehrs's testimony would be unreliable because time and logistical constraints prevented her from performing "a full forensic review" of EXT1 and L1H1. *Id.* Accordingly, on October 22, 2012, this Court conducted a hearing under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to assess the validity of the government's concerns regarding Ms. Loehrs's methodology. *See generally* Tr.

On November 21, 2012, Defendant also filed a motion to request, in general, a second *Daubert* hearing. The Defendant's motion explains that Defendant has been "provided an additional Forensic Analysis Report dated October 23, 2012 and prepared by one of the government's designated experts, Mr. Martinez." Def.'s Mot 2. Even after reading this Forensic Analysis Report, however, Defendant does not say what expert opinions are likely to be rendered in the course of the government's case. Nor does Defendant provide grounds to challenge those expert opinions as unreliable.

3

## II. DISCUSSION

### A. Standard

A district court may admit opinion testimony by a qualified expert witness under Rule 702 of the Federal Rules of Evidence only if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Because "[e]xpert evidence can be both powerful and quite misleading," a trial court "exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595. The trial court exercises "the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152-53 (1999).

A trial judge's "gatekeeping obligation applies . . . to all expert testimony," even where the expert testimony is not "scientific" in nature. *Id.* at 147. Rule 702 "applies its reliability standard to all 'scientific,' 'technical,' or 'other specialized' matters within its scope." *Id.* (quoting Fed. R. Evid. 702). Finally, "a judge assessing a proffer of expert . . . testimony under Rule 702 should also be mindful of other applicable rules," including particularly Rules 703, 706, and 403. *Daubert*, 509 U.S. at 595. Rule 403 requires the exclusion of even well-founded and relevant expert evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### B. Analysis of Government's Motion

The Court has conducted a hearing under *Daubert* to evaluate Ms. Loehrs's qualifications as an expert and the reliability of her testimony. *See generally* Tr. The government was given

an opportunity for cross-examination. *Id.* at 37-86. The Court has also reviewed in chambers a copy of Ms. Loehrs's expert report, which had previously been provided to the government and discussed in detail in the government's motion. *See* Gov't Mot.; Def.'s Mot. 2 ("[A] duplicate original of the Defense's Computer Forensics Expert's Report was provided to the Court. A similar duplicate original had been provided to the government thirty (30) days earlier.").

The Court finds no fault with Ms. Loehrs's credentials or qualifications as an expert, and recalls that the government's motion made no attempt to contest them. *See* Gov't Mot. 8. Parts of Ms. Loehrs's testimony, however, contain logical gaps and legal conclusions that are highly likely to confuse and mislead the jury. Because of the unique power of expert evidence to mislead a jury, a trial judge "exercises more control over experts than over lay witnesses . . . ." *See Daubert*, 509 U.S. at 595. Therefore, as explained in greater detail below, the Court will exclude those portions of Ms. Loehrs's testimony that threaten to mislead the jury with confusing logical gaps and legal conclusions.

It also appears that a great deal of Ms. Loehrs's testimony seeks only to establish facts that are not in dispute. Expert testimony is admissible only where it will "help the trier of fact . . . to determine a fact in issue." Fed. R. Evid. 702. To the extent that expert testimony is used merely to confirm facts of which the jury is already adequately aware, this redundant testimony may be excluded to avoid "undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Therefore, as explained in greater detail below, certain portions of Ms. Loehrs's evidence will only be admitted if, during the government's case in chief, the government disputes or fails to address those facts about which Ms. Loehrs is capable of testifying.

5

It is worth explaining here why the Court has chosen to admit specific portions of Ms. Loehrs's testimony conditionally, rather than exclude it altogether, despite serious concerns that even these parts of her testimony have the potential to be confusing and cumulative. The reason is that specific matters about which Ms. Loehrs's may testify lie at the heart of this case. In *United States v. Alexander*, the United States Court of Appeals for the Fifth Circuit found that the "particular circumstances" of the case "mandate[d]" the admission of expert evidence, because "[t]he only substantial evidence connecting Dr. Alexander to the robbery" was also the subject matter of the expert's testimony. 816 F.2d 164, 168-69 (5th Cir. 1987). Because "[t]he entire case against Victor Alexander turned on [the subject of the expert testimony]," the Fifth Circuit found that "it was clearly erroneous for the district court to exclude without good reason relevant expert testimony bearing directly on that issue." *Id.*

Even though there are sufficiently "good reason[s]" to exclude all of Ms. Loehrs's testimony in this case, the Court can foresee a scenario similar to the one described in *Alexander*, in which parts of Ms. Loehrs's "testimony may make the entire difference between a finding of guilt or innocence." *See id.* (quoting *United States v. Moore*, 786 F.2d 1308, 1313 (5th Cir. 1986)). That is, the government may ultimately attempt to contest certain facts that will be of critical importance to this case regarding the computer network in Defendant's home and the software on Defendant's computer, despite the government's hints to the contrary during the *Daubert* hearing. *See, e.g.*, Tr. 58 (Counsel for the Government: "Okay . . . . There's no contest here as to whether there were multiple people that had access to EXT-1, okay. That simple. We don't care."). The government is also free to rest its case in chief without addressing these particular facts at all. In either scenario, Defendant could conceivably be left unable to rebut the government's contentions without Ms. Loehrs's testimony.

6

District courts frequently place restrictions on expert witnesses as part of their "gatekeeping role." *See Daubert*, 509 U.S. at 597. For example, in *Spreadsheet Automation Corp. v. Microsoft Corp.*, the district court excluded a damages expert's testimony regarding "reasonable royalty analysis" based on "consent decrees, settlements, and licenses made under the threat of litigation," which the district court found "would likely confuse the jury." 587 F. Supp. 2d 794, 800-01 (E.D. Tex. 2007). In the same order, the district court admitted the damages expert's testimony regarding "judgments or licenses not reached under threat of litigation." *Id.* Similarly, in *Ergon-West Virginia, Inc. v. Dynegy Mtkg. & Trade*, the district court issued an order preventing an expert witness from "interpreting the contract language or declaring that [the defendant] was not in breach," but permitted the same witness to "offer[] testimony regarding industry custom and practice related to force majeure." No. 3:06-CV-714, 2011 WL 765555, at *8 (S.D. Miss. Feb. 25, 2011). Therefore, the Court will now set out the limited conditions under which Ms. Loehrs may testify.

### 1. Ms. Loehrs may not render an opinion regarding what is or is not "evidence" of knowing receipt and possession.

The portion of Ms. Loehrs's expert testimony that most threatens to confuse the jury is her opinion that "[t]he fact that child pornography files exist on a computer is not evidence that the user of that computer knowingly received or possessed those files." Loehrs Report 3. Ms. Loehrs apparently assumes that circumstantial evidence is not evidence, but she is incorrect. The Fifth Circuit has found that where a defendant possessed laptop computers containing images of child pornography, and where no evidence in the record showed "that other individuals ever used these laptops or exercised any control over them," these facts constituted at least "circumstantial evidence indicat[ing] that . . . possession was knowing." *United States v. Terrell*, No. 11-50602,

7

2012 WL 5383540, at *8-9 (5th Cir. Nov. 5, 2012). The Court acknowledges that files may be stored on a computer without the owner's knowledge. Likewise, where a defendant's control of the computer was not exclusive, the presence of prohibited images on a defendant's computer may not be conclusive evidence of knowledge. *See United States v. Moreland*, 665 F.3d 137, 151-54 & n.7 (5th Cir. 2011). But inferring knowledge from possession is a permissible inference, and an expert's announcement that jurors must not draw this permissible inference would undoubtedly confuse the jury. *See Terrell*, 2012 WL 5383540, at *8-9.

Even more fundamentally, Ms. Loehrs's opinion about what does or does not constitute evidence "is a legal opinion and inadmissible." *See Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997); *see also Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law."); *Estate of Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999). "[A]llowing . . . [testimony on] matters of law would be harmful to the jury." *Askanase*, 130 F.3d at 673. "There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." *Id.* This Court will therefore make its own instructions to the jury regarding issues of proof in this case, including the validity of circumstantial evidence and the inferences that may or may not be drawn. Plainly stated, an expert's "opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Ms. Loehrs's opinion as to what is or is not evidence of knowledge is inadmissible.

### 2. Ms. Loehrs may not testify about her inability to "put a person at the keyboard" when pornography was accessed, or the implications of her inability.

Ms. Loehrs has also repeatedly described a method by which she believes she could confidently identify the person who accessed the prohibited images on the dates and at the times

when, according to her own research, the prohibited images were indeed accessed from
Defendant's computer, L1H1. Tr. 17-18, 21, 69; Loehrs Report 30. Ms. Loehrs has called this
process "put[ting] a person at the keyboard when [the pornography] was accessed." Tr. 69.

When applying this method, Ms. Loehrs "take[s] a file that's chargeable [as a prohibited
image] and that's been opened, and on that date and time, place[s] a user at the keyboard with
some other information, a chat, an e-mail, personal document, logged-in account, [in order to]
start putting together a picture of who's at the keyboard." *Id.* at 25. By this, the Court takes Ms.
Loehrs to mean that she can corroborate the identity of the individual who accessed the
prohibited images by cross-referencing other user-specific files, personal accounts, and programs
that were accessed at approximately the same time on the same device. If a sufficient pattern of
user-specific activities takes place on a computer at the same times when prohibited images were
also accessed, Ms. Loehrs believes she can confidently render an expert opinion that the user
associated with these activities was also the individual who accessed the prohibited images. In
the Court's view, this appears to be a sound and useful forensic method. There is also every
reason to believe that Ms. Loehrs possesses the expertise to apply this forensic method
adequately.

But the conclusion urged by Ms. Loehrs is unsound and very misleading in this particular
case. That is, Ms. Loehrs has repeatedly sought to testify that she was "not able to put anyone at
the keyboard," *see* Loehrs Report 24, 30, 37; Tr. 25, 51, 53, 58, 69, between six o'clock and
seven o'clock in the evening on January 4, 2012, which are the times when Ms. Loehrs's own
report confirms that the prohibited images were indeed accessed from L1H1, *see* Loehrs Report
23-27, 29-34, 37-38. With this mantra, Ms. Loehrs is unmistakably urging a broad negative
inference that Defendant's computer, L1H1, actually did not contain any evidence that

9

Defendant was at the keyboard of his own computer on this day and time. As to this desired inference, however, Ms. Loehrs's research lacks any probative value.

Working through her assistant, Ms. Pulido, Ms. Loehrs was only able to access Defendant's computer, L1H1, and the external hard drive, EXT1, during the course of "two days at an off-site facility." Tr. 13. Ms. Loehrs's assistant was not able to "leave the laptop up and running overnight." *Id*. at 14. According to Ms. Loehrs herself, this was not nearly enough time for the completion of a thorough forensic exam. By Ms. Loehrs's own estimation, "these processes typically take days, if not weeks, to run." *Id.* Ms. Loehrs and her assistant, therefore, could not possibly have conducted the sort of comprehensive sweep necessary to prove the negative that Ms. Loehrs urges: that L1H1 and EXT1 contain no evidence whatsoever that Defendant himself was at his own keyboard when pornography was viewed from L1H1.

Ms. Loehrs's stated conclusion is therefore imprecise, misleading, and similar to the expert testimony that the Eleventh Circuit decided was properly excluded in *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004). In that case, a trial court excluded an expert's testimony that the expert would have "expected" to find the defendant's hair and semen on the body of a victim of sexual assault, had the defendant been responsible for that assault. *Frazier*, 387 F.3d at 1265-66. The Eleventh Circuit upheld the trial court's determination that the expert's "expectation" of finding a certain kind of evidence was sufficiently imprecise "to confuse the jury, and might well have misled it." *Id.* In this case, too, Ms. Loehrs's description of evidence that she might have expected to find—but did not find—is very imprecise. By no means does Ms. Loehrs's testimony show that she could never have "put [Defendant] at the keyboard" had she only continued her search for a more reasonable period.

Accordingly, Ms. Loehrs's expert opinion on this question is unreliable. An "expert's testimony must be reliable at each and every step or else it is inadmissible." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion . . . ." *Id.* Here, there is no sufficient link between Ms. Loehrs's unfinished search for evidence and her implied conclusion that no such evidence could have existed. To avoid confusing the jury with an expert's unreliable conclusion, therefore, the Court hereby excludes Ms. Loehrs's opinion regarding her inability to "put a person at the keyboard" when pornography was accessed, or the implications of her inability.

> **3. If, and only if, the government disputes or fails to address these facts, Ms. Loehrs may testify (1) that Defendant's computer, L1H1, was connected to a network and (2) that other computers also opened files from the external hard drive, EXT1.**

Ms. Loehrs also seeks to testify that "based on the forensic analysis that [she] did complete," she was able to confirm "that there were numerous people who had access to this network" of computers within Defendant's home. Tr. 58, 62; Loehrs Report 11. During her investigation, Ms. Loehrs "found evidence that all the computers on the network were accessing data on EXT-1," the external hard drive where the prohibited images were allegedly stored. *See* Tr. 62; Gov't Mot. 2-3.

The exclusivity of a defendant's control over a computer allegedly containing child pornography is a central fact in a criminal case involving charges of receipt, possession, and distribution of child pornography. Compare *United States v. Winkler*, 639 F.3d 692, 695-701 (5th Cir. 2011) (affirming conviction for possession of child pornography where there was no evidence of third-party access and where circumstantial evidence supported finding that

11

defendant knowingly possessed images), with *Moreland*, 665 F.3d at 151-54 & n.7 (reversing conviction for possession of child pornography where evidence showed a third party accessed computer around time of pornography download). Therefore, as the Fifth Circuit held in *Alexander*, "the particular circumstances" of this case mandate the admission of evidence on this issue, because "[t]he entire case against [Defendant] turn[s] on" the nature of Defendant's alleged control over the prohibited images. *See* 816 F.2d at 168-69. Accordingly, Ms. Loehrs should be allowed to testify that her research demonstrated (1) that Defendant's computer was connected to a network and (2) that other computers also opened files from the external hard drive, EXT1, if and only if the government disputes or fails to address either of these critical facts.

Rule 403 will not tolerate, however, "undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Therefore, if it is already sufficiently apparent from the government's evidence "that there were numerous people who had access to this network" and "that all the computers on the network were accessing data on EXT-1," *see* Tr. 62, then the Court will exclude Ms. Loehrs's redundant testimony as needlessly cumulative.

> **4. If, and only if, the government disputes or fails to address these facts, Ms. Loehrs may testify that (1) a file-sharing program, uTorrent, was found on L1H1, but (2) Gnutella software was found only on another computer that was connected to the network.**

Finally, according to Ms. Loehrs's report, Special Agent Garrett Olsen prepared an affidavit in support of the search warrant that ultimately led to Defendant's arrest. *See* Loehrs Report 4, 9. The Court has not been provided with this affidavit, although Ms. Loehrs has apparently seen a copy. According to Ms. Loehrs, "[t]he Affidavit claims the [prohibited] files were downloaded from the Gnutella Network . . . ." *Id.* at 9. Ms. Loehrs seeks to testify,

however, that there was no Gnutella file-sharing software located on Defendant's computer, and that there was Gnutella file-sharing software located on a different laptop that was found in Defendant's home. *See* Tr. 32, 57, 69. Ms. Loehrs also seeks to testify that, rather than Gnutella, only a different type of file-sharing software, uTorrent, was located on Defendant's laptop, L1H1. Loehrs Report 28; Tr. 26, 71.

The Criminal Complaint in this case is supported by an affidavit that makes no mention of Gnutella, uTorrent, or any other specific type of file-sharing software. *See* Crim. Compl. 2-3. Rather, the affidavit states merely that a computer with an Internet Protocol ("IP") address associated with Defendant's residence was "observed . . . sharing 67 unique files associated with child sexual exploitation." *See* Crim. Compl. 2. Counsel for the government, however, appeared to confirm the importance of the file-sharing software's type while cross-examining Ms. Loehrs at the *Daubert* hearing. Without explanation, counsel for the government asked Ms. Loehrs, "And you would agree with me that evidence of the Gnutella file-sharing software on L1H1 would be important in this case?" Tr. 59. Even without seeing the affidavit associated with the original search warrant, therefore, the Court concludes that the presence or absence of Gnutella software on Defendant's computer or other computers in Defendant's home may play a role in this case. File-sharing software was indeed the supposed means by which Defendant allegedly obtained and distributed the prohibited images described in his indictment. *See* Crim. Compl. 3; Indictment 1-3.

Accordingly, as the Fifth Circuit did in *Alexander*, this Court finds that it would be improper to exclude Ms. Loehrs' expert testimony on this central question, which the government acknowledges to be an important part of this case. *See* 816 F.2d at 168-69. If necessary, Ms. Loehrs may testify that a different file-sharing program, uTorrent, was found on

13

L1H1, and that Gnutella software was found only on another computer that was connected to the computer network. Because Rule 403 will not tolerate "needlessly . . . cumulative evidence," however, Ms. Loehrs's testimony will be excluded as needlessly cumulative if the government's evidence has already established these facts.

## C. Analysis of Defendant's Motion

The Court has also reviewed Defendant's Motion to Exclude Expert Testimony and for a *Daubert* Hearing. The Defendant's motion explains that Defendant has been "provided an additional Forensic Analysis Report dated October 23, 2012 and prepared by one of the government's designated experts, Mr. Martinez." Def.'s Mot 2. Even after reading this Forensic Analysis Report, however, Defendant does not say what expert opinions are likely to be rendered in the course of the government's case. Nor does Defendant provide grounds to challenge those expert opinions as unreliable. As Defendant acknowledges, "the government states that the witnesses will . . . not be asked to render an opinion . . . ." *Id.* at 1 (quotation marks omitted).

A trial court exercises "the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Kumho Tire*, 526 U.S. at 152-53. For this reason, *Daubert* hearings are not automatically required for every proffered expert. *See Frazier*, 387 F.3d at 1264 ("[S]ome expert testimony will be so clearly admissible that a district court need not conduct a *Daubert* hearing in every case . . . ."); *United States v. Nichols*, 169 F.3d 1255, 1262-64 (10th Cir. 1999). Nor is it necessarily required that the assessment of an expert's reliability be conducted outside the presence of a jury. *See United States v. Diaz*, 300 F.3d 66, 74 (1st Cir. 2002); *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000) ("Although . . . the inquiry is a 'preliminary'

one, to be made 'at the outset,' . . . this does not mean that it must be made in a separate, pretrial hearing, outside the presence of the jury.") (quoting *Daubert*, 509 U.S. at 592).

At this time, therefore, there is no need to arrange for a second *Daubert* hearing. This does not mean that the government's witnesses will be held to a standard any less strict under Rules 701 and 702 than Defendant's witnesses. If the government's witnesses are not qualified as experts to the satisfaction of the Court, then they will not be permitted to render opinion testimony based on technical or other specialized knowledge. *See* Fed. Rs. Evid. 701, 702. While observing once again that the qualifications of experts need not be verified outside the presence of the jury, *see Diaz*, 300 F.3d at 74, the Court recognizes that both parties in this case generally would prefer this option. *See* Gov't Resp. 5, ECF. 80; Def.'s Mot. 4. Accordingly, if Defendant identifies in a written motion any expert opinion testimony that the government is likely to proffer and grounds to challenge the reliability of those opinions, then the need for a second *Daubert* hearing will be considered at that time.

## III. CONCLUSION

It is therefore **ORDERED**, for the reasons set forth above, that the government's Motion, ECF No. 54, is hereby **GRANTED** in part and **DENIED** in part. Under Rule 702 of the Federal Rules of Evidence, Defendant's expert witness, Ms. Tami Loehrs, will be permitted to testify only in accordance with the following restrictions and conditions:

1. Ms. Loehrs may not render an opinion regarding what is or is not "evidence" of knowing receipt and possession. This is an inadmissible legal opinion.

2. Ms. Loehrs may not testify about her inability to "put a person at the keyboard" when pornography was accessed, or the implications of her inability. This

15

imprecise statement urges a false conclusion based on incomplete research. If offered by an expert witness, this statement would likely mislead the jury.

3. If, and only if, the government disputes or fails to address these facts, Ms. Loehrs may testify (1) that Defendant's computer was connected to a network and (2) that other computers also opened files from the external hard drive, EXT1. If the government addresses these facts and does not contest them, then Ms. Loehrs's testimony will be cumulative and therefore inadmissible.

4. If, and only if, the government disputes or fails to address these facts, Ms. Loehrs may testify that a file-sharing program, uTorrent, was found on L1H1, but Gnutella software was found only on another computer that was connected to the network. If the government addresses these facts and does not contest them, then Ms. Loehrs's testimony will be cumulative and therefore inadmissible.

**IT IS FURTHER ORDERED**, for the reasons set forth above, that Defendant's Motion to Exclude Expert Testimony and for a *Daubert* Hearing, ECF No. 79, is hereby **DENIED**. Defendant may later request a *Daubert* hearing outside the presence of the jury, if Defendant specifically identifies the expert opinion testimony proffered by the government and grounds to challenge the expert opinion testimony as unreliable.

**SO ORDERED.**

SIGNED this 11th day of December, 2012.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE